## Ennis Estate

*Edwin Booth* and *William F. Scheufele*, for accountant.

*Charles Morris Hamilton* and *Harry E. Apeler*, for residuary legatees.

*Hugh P. Connolly*, for Commonwealth.

SHOYER, J., August 31, 1961.—Edward Ennis, also known as Edward J. Ennis, died May 11, 1960, not survived by a spouse, children or other issue, and leaving a will and codicil, whereby, after directing the payment of his debts and funeral expenses, he provided that: "It is my will and direction that my remains be interred in the Methodist Cemetery, near Berlin, Maryland, in a lot near the main road in said Cemetery to be purchased by my Executor . . . and that there be erected upon the said lot a mausoleum at a cost of Ten Thousand dollars, or more if my Executor deem it necessary or proper, and that my remains be placed in said mausoleum . . ."; directed that a stone archway be erected at the entrance to the above-mentioned Methodist Cemetery, as a memorial to him, at a cost not to exceed $5,000; gave $2,000 "unto the son of my deceased niece. . .," without naming the niece; gave all the rest of his estate to his nephews and nieces and issue of any deceased nephews and nieces, per stirpes, "excepting the issue of my deceased nephew, John Tingle, who are amply provided for . . ."; directed that his furniture business conducted by him at Deerfield, N. J., including all stock on hand, merchandise, fixtures and real estate in which the business is being conducted, shall be sold by his executor and "that Rosa B. Fischer shall be given first opportunity to purchase the same if she be in my employ at the time of my

decease"; and appointed his nephew, William E. Bethards, Sr., his executor, on condition he serve as such without compensation. By his codicil dated January 31, 1957, he directed that his executor "have the compensation provided by Law . . ."

Letters testamentary were granted to the accountant on May 18, 1960, and proof of publication of the grant was submitted.

Payments of transfer inheritance tax on August 11, 1960, in the sum of $17,500, and on May 12, 1961, in the sum of $10,885.77, were duly vouched . . .

### The Mausoleum

Credit is taken in the account for payments aggregating $16,000 to Marr-Gordon, Inc. Of that sum, $11,500 was for the erection of a mausoleum at the Evergreen Cemetery, Berlin, Md., pursuant to item second of the will, and $4,500 for the stone archway pursuant to item third.

The Commonwealth objects to the allowance of $11,500 cost of the mausoleum, and for inheritance tax purposes would allow $5,000 as a deduction.

The accountant, in support of the expenditure, testified as to his efforts in carrying out testator's directions with respect to the erection of the mausoleum, his search for a suitable contractor, the selection of the type of mausoleum, and his eventual contract with the Marr-Gordon, Inc., company. Harvard C. Wood, Jr., an expert in the mausoleum business, fully and completely supported the reasonableness and propriety of the amount expended.

In this connection it is noted that decedent's gross estate aggregated approximately $270,000. He had a "new and second-hand furniture business" at Deerfield, N. J., and owned the real estate on which the business was located. He was not married. From these few facts, we can only guess at the "station of

the deceased in life," which was the standard set by Mr., later Chief, Justice Schaffer in Kreeger's Estate, 277 Pa. 326, 329, prior to the 1923 amendments to the inheritance tax laws.

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, sec. 2, as last amended by Act of May 3, 1956, P. L. 1525, 72 PS §2302, in pertinent part, provides:

"In ascertaining the clear value . . . the only deductions to be allowed from the gross values of such estates by the register of wills shall be . . . reasonable expenses for the erection of monuments or grave stones, grave and lot markers . . ."

The above-quoted language was first introduced by the amendment of July 12, 1923, P. L. 1078. The amendment of May 16, P. L. 244, just two months earlier, had allowed "the expenses of erecting at the grave of the decedent a suitable tombstone, monument, or marker."

Clearly, it was not the intention of the legislature to permit decedent to determine what was suitable by the directions in his last will and testament. Hence, the significant change in the statutory allowance to "reasonable."

Nor can we accept accountant's argument that decedent's standard of reasonableness should be our guide. In Filoon Estate, 71 D. & C. 506, 508, the court, Holland, P. J., aptly stated:

". . . when the legislature used the terms 'monuments or gravestones, grave and lot markers', it never contemplated a mausoleum. It plainly inferred that any decedent or party interested in the estate desiring to indulge in the vanity and superfluity of a mausoleum could pay for it themselves and pay the tax on the expenditure.

"It is further reduced to the narrower question whether $3,000 would constitute 'reasonable expenses

for the erection of monuments, or gravestones, grave and lot markers' in an estate of $80,000 . . . Certainly an elaborate monument with accompanying gravestones and grave and lot markers can be had for $3,000, regardless of the size of the estate, and such a memorial and decoration in good taste is all that is allowed by the statute as a deduction."

Counsel for the accountant, differing with Judge Holland, contends that when the legislature used the word "monuments" it did not thereby exclude "mausoleums," inasmuch as it did simultaneously authorize the exemption of perpetual trusts which are created to maintain "enclosures and *structures*" erected on family burial lots. The "extremely literal interpretation" of Filoon's Estate was error, he argues.

When one considers the dictionary definition of the word "mausoleum," to wit, a magnificent tomb, and the word's derivation from the name of King Mausolus whose elaborate tomb at Halicarnassus was ranked as one of the seven wonders of the world, the reason that the legislature shied away from any possible implication of such extravagance becomes obvious. I agree with Judge Holland that the act allows no deduction for construction of a mausoleum per se.

It seems appropriate to note at this point that the new Inheritance and Estate Tax Act of June 15, 1961, (No. 207) effective next January 1st, in section 615 adds another restriction to "reasonable" expenses, viz., "customary." Clearly, mausoleums are the exception, not the rule.

In his excellent little book, "Practical Suggestions for Drawing Wills and the Settlement of Estates in Pennsylvania" (1909), Judge Gest of this court observed: "The pathetic and generally futile desire to be remembered after death often induces a testator to provide for the erection of an elaborate tomb, and it has even been said, I believe, that a testator might

direct that his entire estate should be so expended": (page 70). But in Dreisbach Estate, 384 Pa. 535, 540, our Supreme Court subsequently held that testamentary directions to set aside an excessive amount for the maintenance of testator's family plot offended public policy, and, upon the objections of an heir, the sum set aside was reduced from $169,000 to $20,000.

The tax mandate of the legislature is to restrict allowances to those only which are "reasonable," as to those sums set aside for maintenance of cemetery lots as well as those sums expended for monuments and markers. Surely, the register of wills, in reducing the requested allowance to $5,000, has sought to comply with the opinions of our highest court as well as the restrictions of the legislature. To ascertain what is reasonable requires the exercise of discretion; a duty falling in the first instance on the register of wills, secondarily on us. In attacking the register's appraisement, the accountant has the burden of convincing us that the register's figure was both " 'unfair and unconscionable' ": Clabby's Estate, 308 Pa. 287, 291. He has failed in his burden, and the court is satisfied that the register has not abused his discretion in allowing no more than $5,000 for the mausoleum.

This is not to say that the accountant has, in any respect, departed from testator's directions with respect to the mausoleum. On the contrary, there is no question of, and the record clearly establishes, his diligence and good faith with respect thereto, and, except for tax purposes, as above, the credit taken therefor in the account is allowed: cf. Nolan Estate, 352 Pa. 75 . . .

And now, August 31, 1961, the account is confirmed Nisi.